JOHN R. GIBSON, Circuit Judge:
 

 The issue before us is whether the New York Department of Labor may withhold benefits on a January 1996 unemployment insurance claim by Stanley Malinowski, who filed for bankruptcy in January 1995, to recover an overpayment made to Malinowski on a January 1994 unemployment claim. The bankruptcy court held that the Department could withhold the benefits under the doctrine of recoupment, and the district court affirmed. Malinowski and his wife Diane appeal, arguing that the pre-petition and post-petition claims for unemployment insurance benefits are entirely separate claims, and that they are statutory in nature, not contractual; therefore, they contend that the Department’s claim is a set-off, subject to the stay provisions of 11 U.S.C. § 362 (1994), rather than a permissible recoupment. We reverse the judgment of the district court and bankruptcy court, and remand with directions to order the Department to pay to the Malinowskis the unemployment insurance benefits withheld.
 

 Stanley Malinowski collected unemployment insurance benefits in early 1994, pursuant to an initial determination of eligibility by the New York Department of Labor. On March 9, 1994, the Department determined Malinowski was ineligible for benefits on that claim because he had left his employment voluntarily and without good cause. The Department charged Malinowski with overpayment in the amount of $2,072. On January 31, 1995, Malinowski and his wife filed a petition in bankruptcy under Chapter 13. On January 11, 1996, Malinowski filed a new claim for unemployment insurance benefits. The Department determined him to be eligible, and established his new benefit rate at $300 per week. Under its regulations, the Department then withheld fifty percent of the 1996 weekly benefits until the 1994 payment was recovered. The Department did not file a claim in the Chapter 13 case, but withheld the $2,072 from Malinowski’s post-petition benefits without seeking relief or modification of the automatic stay imposed by 11 U.S.C. § 362 (1994).
 

 The Malinowskis moved for an order requiring the Department to turn over the monies withheld. The bankruptcy court held that the Department was entitled to withhold the benefits notwithstanding the automatic
 
 *133
 
 bankruptcy stay, and the district court affirmed. The Malinowskis appealed.
 

 The crux of this case is whether the Department’s withholding of Stanley Malinowski’s benefits is a set-off or a recoupment. “The right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding ‘the absurdity of making A pay B when B owes A.’”
 
 Official Committee of Unsecured Creditors v. Manufacturers and Traders Trust Co. (In re The Bennett Funding Group, Inc.),
 
 146 F.3d 136, 140 (2d Cir.1998) (quoting
 
 Citizens Bank v. Strumpf,
 
 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995)). In set-off, the mutual debts arise from different transactions.
 
 Newbery Corp. v. Fireman’s Fund Ins. Co.,
 
 95 F.3d 1392, 1398 (9th Cir.1996). In recoupment, on the other hand, the claim and counterclaim- must arise out of the same transaction or set of transactions.
 
 New York State Elec. & Gas Co. v. McMahon (In re McMahon),
 
 129 F.3d 93, 96 (2d Cir.1997). “[T]he typical situation in which equitable recoupment can be invoked involves a credit and debt arising out of a transaction
 
 for the same goods or services.” Newbery,
 
 95 F.3d at 1402-03 (quotation marks omitted). Recoupment is “ ‘in the nature of a defense,’ ” the purpose of which is to do justice viewing one transaction as a whole.
 
 See United Structures v. G.R.G. Eng’g,
 
 9 F.3d 996, 999 (1st Cir.1993)(Breyer, J.) (citation omitted);
 
 accord Constantino v. State,
 
 99 Misc.2d 362, 415 N.Y.S.2d 966, 968-69 (N.Y.Ct.Cl.1979) (Recoupment “permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.”),
 
 cited with approval in McMahon,
 
 129 F.3d at 97.
 

 The distinction between set-off and recoupment is crucial because set-off claims are subject to the automatic stay of 11 U.S.C. § 362 and are substantively limited by the Bankruptcy Code, 11 U.S.C. § 553 (1994). Recoupment, in contrast, comes into bankruptcy law through the common law, rather than by statute,
 
 see University Medical Center v. Sullivan (In re University Medical Ctr.),
 
 973 F.2d 1065, 1079 (3d Cir.1992), and is not subject to the limitations of section 553 or the automatic stay.
 
 See McMahon,
 
 129 F.3d at 96;
 
 Newbery Corp.,
 
 95 F.3d at 1399;
 
 In re University Medical Ctr.,
 
 973 F.2d at 1079-80. The automatic stay is inapplicable, because funds subject to recoupment are not the debtor’s property.
 
 See Megafoods Stores, Inc. v. Flagstaff Realty Associates (In re Flagstaff Realty Assoc.),
 
 60 F.3d 1031, 1035 (3d Cir.1995) (landlord-debtor had no interest in future rental to extent of tenant’s recoupment claim);
 
 see also G.R.G. Eng’g,
 
 9 F.3d at 999 (“[A] debtor has, in a sense, no right to funds subject to recoupment.”).
 

 The definition of “transaction” has been developed in the context of determining whether counterclaims are compulsory or permissive under the rules of civil procedure.
 
 See Coplay Cement Co. v. Willis & Paul Group,
 
 983 F.2d 1435, 1440 (7th Cir.1993);
 
 Frederick v. United States,
 
 386 F.2d 481, 487 (5th Cir.1967). In this context a transaction “may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.”
 
 Moore v. New York Cotton Exch.,
 
 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926);
 
 see Montgomery Ward Dev. Corp. v. Juster,
 
 932 F.2d 1378, 1381-82 (11th Cir.1991). However, in recoupment in bankruptcy, the term “transaction” is given a more restricted definition.
 
 See McMahon,
 
 129 F.3d at 97 (“In light of the Bankruptcy Code’s strong policy favoring equal treatment of creditors and bankruptcy court supervision over even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed.”) The Third Circuit has held that “a mere logical relationship is not enough” to warrant recoupment in the bankruptcy context.
 
 In re University Medical Ctr.,
 
 973 F.2d at 1081. The Third Circuit held that since recoupment is an equitable, non-statutory exception to the automatic stay, it should be limited in bankruptcy to cases in which “both debts ... arise out of a
 
 single integrated transaction
 
 so that it would be
 
 inequitable
 
 for the debtor to enjoy the benefits of that transaction without also meeting its obligations.”
 
 Id.
 
 (emphasis added).
 

 
 *134
 
 When the circumstances that gave rise to the credit and those giving rise to the creditor’s obligation to the debtor do not result from a set of reciprocal contractual obligations or from the same set of facts, they are not part of the same transaction. In this case, the two claims for unemployment benefits were based upon different episodes of unemployment. The statute required Malinowski to work between 1994 and 1996 in order to qualify for the 1996 benefits.
 
 See
 
 New York Labor Law § 527 (1997) (to qualify for benefits claimant must have worked in last year). The worker was the same, the agency was the same, the law was the same, but the claims arose from different sets of facts, each complete in itself. The Department asks us to call them one “transaction.”
 
 [1]
 

 There are two theories under which governmental entities have sought to consolidate claims arising out of independent sets of facts giving rise to statutory rights, but neither theory gives us a good reason for broadening recoupment in contravention of the federal bankruptcy policies of debtor protection and equal distribution to creditors.
 

 The first theory is that the government granting past and present benefits may decide whether they are one transaction or two. A governmental entity may attempt to consolidate the claims by defining the claimant’s present substantive rights by reference to past events. For instance, in
 
 United States v. Consumer Health Services, Inc.,
 
 the District of Columbia Circuit held that the government was entitled to recoup overpayments under a statute setting the amount of money to which a Medicare provider was entitled at the amount earned within each settlement period “less adjustments for prior overpayments.” 108 F.3d 390, 894 (D.C.Cir.1997). The District of Columbia Circuit held that this was a substantive limit on the amount the provider was entitled to and that there was no “authority for the proposition that the Bankruptcy Code can act to override an explicit statutory limitation on what the government owes for a particular service.”
 
 Id.
 
 at 394-95.
 
 But see University Medical Ctr.,
 
 973 F.2d at 1080-82;
 
 Hagan v. Heckler (In re Hagan),
 
 41 B.R. 122, 127-28 (Bankr.D.R.I.1984). The statute at issue in
 
 Consumer Health Services
 
 was a federal statute, and the D.C. Circuit’s holding was an attempt to ascertain the intent of Congress. 108 F.3d at 394. In the case of federal benefits, Congress is certainly able to decide on what terms it will grant benefits, since it is able to override its own bankruptcy laws at will. On the other hand, a state may not choose to define its rights- in a way that defeats the ends of federal bankruptcy law.
 
 [2]
 

 The second theory under which states have sought to consolidate unrelated entitlement claims is by analogizing the governmeni/claimant relationship to a contractual relation. Under New York law the Department of Labor has the right to recover overpaid unemployment insurance benefits by withholding current benefits.
 
 See Schwartfigure v. Hartnett,
 
 83 N.Y.2d 296, 300-01, 610 N.Y.S.2d 125, 632 N.E.2d 434 (1994); 12 N.Y.C.R.R. § 470.5 (1997). The bankruptcy court in this case relied on
 
 In re Maine,
 
 32 B.R. 452 (Bankr.W.D.N.Y.1983), which held that the New York unemployment insurance law created a “continuing and ongoing relationship” analogous to an executory contract,
 
 see id.
 
 at 455. A bankruptcy debtor who wishes to retain the benefits of an executory contract has to assume its obligations as well.
 
 See id.
 
 (citing 11 U.S.C. § 365).
 
 Maine
 
 conc
 
 *135
 
 eluded from this analogy that the Department’s claim for overpayment and the debt- or’s claim for current benefits should be treated like claims arising out of a single contract for recoupment purposes. Significantly, in
 
 Maine,
 
 there is no indication whether the overpayment and the current benefits resulted from the same or different claims for benefits.
 

 We reject the contract analogy in this case. Here, the overpayment and the current payment result from different claims for unemployment insurance, each with eligibility based upon different periods of unemployment. Significantly, the two periods of employment were separated by the filing of the petition for bankruptcy. The Department’s analysis offers no reason to treat two such unrelated claims as one executory contract, rather than two contracts, in one of which the State has already performed its-duties.
 
 See In re Hagan,
 
 41 B.R. at 126. Therefore, the contract analogy does not really supply a reason for consolidating the two claims.
 

 Furthermore, not all cases in which claim and counterclaim arise from the same contract are appropriate for recoupment. Where the contract itself contemplates the business to be transacted as discrete and independent units, even claims predicated on a single contract will be ineligible for recoupment.
 
 See Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.),
 
 82 F.3d 956, 962-63 (10th Cir.1996) (overarching distributorship agreement governed many different types of sales and related activities, which were considered separate transactions);
 
 California Canners & Growers v. Military Distributors of Virginia (In re California Canners & Growers),
 
 62 B.R. 18 (9th Cir. BAP 1986) (each delivery under contract a separate transaction). It is far from clear that the claims in this case could be characterized as one transaction even if we accepted the contract analogy. The only available basis for unifying the two claims at issue here is the idea that the State enacted a lifetime government insurance scheme. But in fact, the statute provides for discrete and independent claims for different periods of unemployment, with the different periods of employment creating eligibility for specific periods of unemployment benefits. We simply cannot stretch the requirement of a single transaction, which is central to recoupment, to a lifetime government insurance scheme, which in practical application must be based upon eligibility created by a specific period of employment. The statutory scheme renders the requirement of transaction applicable to the separate periods of eligibility rather than the scheme as a whole.
 

 Moreover, in light of the equitable nature of the recoupment remedy, the facts in the particular case are important. The Department asks us to take away the unemployment insurance safety net from a debtor in bankruptcy, who has not been accused of willful wrongdoing in connection with the overpayment. The Department withheld benefits on Malinowski’s later claim at the rate of fifty percent, which is the rate appropriate when the overpayment did not result from willful conduct of the claimant. 12 N.Y.C.R.R. § 470.5(c). The lack of fraud distinguishes Malinowski’s case from
 
 Maine
 
 and others in which the government was permitted to recoup overpayments resulting from fraud.
 
 Cf. In re Maine,
 
 32 B.R. at 453;
 
 In re Gaither,
 
 200 B.R. 847, 849 (Bankr.S.D.Ohio) (1996);
 
 Ross v. Missouri Division of Employment Security (In re Ross),
 
 104 B.R. 171, 172 (E.D.Mo.1989).
 
 [3]
 

 Accordingly, we reverse the judgment of the district court and remand with directions to order the Department to pay to the Mali-nowskis the unemployment insurance benefits withheld.
 

 [1]
 

 . The Department relies on an unpublished opinion,
 
 Gencarelli v. New York State Department of Labor,
 
 No. 894-81350-478 (Bankr.E.D.N.Y. Nov. 23, 1994), which is irrelevant because it involves only one claim.
 

 [2]
 

 . There are several cases in which state laws reducing a claimant's rights by reference to past overpayments were held to compel recoupment.
 
 See Oregon v. Harmon (In re Harmon),
 
 188 B.R. 421, 426 (9th Cir. BAP 1995) (Court should view overpayment and later claim from "unitary perspective of the Oregon statute.");
 
 In re Gaither,
 
 200 B.R. 847, 852-53 (Bankr.S.D.Ohio 1996) (Ohio statute provides for recoupment);
 
 Ross v. Missouri Div. of Employment Security (In re Ross),
 
 104 B.R. 171 (E.D.Mo.1989) (Missouri Division of Employment Security had option to reduce overpayment from later benefits). However, we believe that the cases deferring to a state's abridgement of a claimant's rights missed a key distinction between the power of Congress and the power of states to override federal bankruptcy laws.
 

 [3]
 

 . Even in
 
 Ross,
 
 in which the court held that unemployment insurance overpayments were subject to recoupment, the court called for a "compromise” to avoid "the hardship that could occur when an unemployed bankrupt would have to forego this sole subsistence as a penalty for receiving excess payments for earlier claims, especially when the overpayments might have occurred a long time before.” 104 B.R. at 174.