**CONTINENTAL CASUALTY COMPANY, Appellant,**

v.

**Richard GULLETT and Sandra Gullett, Debtors and Appellees.**

**No. Civ.A. H–99–0862.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 24, 1999.

findings and conclusions as necessary or as may be requested by any party.

797

S. John Mastrangelo, Attorney at Law, Bellaire, TX, for debtors.

Richard Gullett, Sandra K. Gullett, Houston, TX, pro se.

James David Ebanks, John B. Wallace, Giessel Barker and Lyman, Houston, TX, for appellant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is Appellant Continental Casualty Company's appeal of the Bankruptcy Court's January 6, 1999 Amended Order. *See* Notice of Appeal [Doc. # 1]. Pursuant to this appeal, both Appellant Continental Casualty Company

("Continental") and Appellees Richard Gullett and Sandra K. Gullett (collectively, the "Gulletts") have submitted briefs and other pertinent matters. *See* Corrected Appellant's Brief [Doc. # 13] ("Appellant's Brief"); Appellee's Brief [Doc. # 11]; Appellant's Reply Brief [Doc. # 14]. The Court has considered all pleadings submitted, all matters of record, and the applicable authorities, and concludes that the Bankruptcy Court's Amended Order should be **reversed.**

## I. *FACTUAL BACKGROUND*

This bankruptcy appeal stems from various legal proceedings involving Appellee/Debtor Richard Gullett ("Gullett"). Gullett filed a workers' compensation claim for injuries he received on his job. During the pendency of his claim, he also filed for Chapter 13 bankruptcy. Appellant Continental is the workers' compensation insurance carrier for Gullett's employer. Gullett also filed an adversary proceeding against Continental in connection with his bankruptcy case alleging that Continental's actions in the workers' compensation proceedings violated the terms of the automatic stay. The Bankruptcy Court not only agreed with Gullett's positions, it granted relief beyond that sought by Gullett. The Bankruptcy Court imposed severe monetary sanctions upon Continental, and awarded attorney's fees and costs to Gullett. Continental appeals these Bankruptcy Court rulings.

### A. *Worker Compensation Statutory Scheme in Texas*

To appreciate the issues raised by the parties in the adversary proceeding and this appeal, a description of the workers' compensation laws in Texas is necessary.

*Benefit Structure.*—A person injured on the job can file a workers' compensation claim against the employer's workers' compensation insurance carrier. The claimant is entitled to receive two types of benefit, medical benefits and monetary benefits. *See* Tex.Lab.Code Ann. §§ 408.021, 408.081 (Vernon 1996). There are three types of monetary benefits: temporary income benefits, impairment income benefits, and supplemental benefits. These benefits are distributed sequentially.

After missing seven days from work, the claimant can automatically claim temporary income benefits ("TIB"). *Id.* § 408.101. TIB are paid during the time the claimant is off work or is working at a lower than pre-injury wage. The carrier stops paying TIB when either a doctor determines that the claimant has reached maximum medical improvement ("MMI") or the employee returns to work at pre-injury wages. *Id.* § 408.102.

When MMI is reached, the claimant may be eligible for impairment income benefits. *Id.* § 408.122. In order to qualify for such benefits, the claimant must present evidence of physical impairment that is based on "an objective clinical or laboratory" findings. *Id.* § 408.122. If the claimant is eligible for impairment income benefits he is assigned an impairment rating. *Id.* § 408.123. That rating is stated as a percentage. After reaching MMI, a claimant begins receiving impairment income benefits. These payments continue for three weeks for every percentage point of impairment rating. Thus, if an employee is assigned a 10% impairment rating, he would receive thirty weeks of impairment income benefits.

An employee may be eligible for supplemental benefits after the expiration of impairment income benefits. *Id.* § 408.142. Any employee whose impairment rating is higher than 15% may apply for supplemental benefits. *Id.* If the request for supplemental benefits is contested, Texas Workers' Compensation Commission ("TWCC") holds a hearing where it decides whether the claimant may receive these extra benefits. *Id.* § 408.147. Even if the TWCC finds that supplemental benefits are proper, a claimant can receive these benefits for only three months. At the end of the three month period, the claimant must re-apply for supplemental benefits.

*Administrative Process.*—The legislature has established a four-tier system for disposition of claims by the TWCC under the Texas Workers' Compensation Act. *Id.* §§ 410.021, 410.308. Each step is a prerequisite to the succeeding one. *See id.* §§ 410.024, 410.169, 410.205. The process begins with an informal resolution of claims through a non-adversarial "benefit review conference" conducted by a "benefit review officer." *Id.* §§ 410.021–.034. The benefit review officer has the authority to order or decline to order benefits. *See id.* § 410.032. If the officer orders payments of benefits, an insurance carrier must begin making payments at that time. *See id.* § 410.032. From the benefit review conference, the parties may proceed, by agreement, to arbitration from the benefit review conference. *See id.* § 410.104. If there is no agreement to arbitrate, a party may seek relief at a contested case hearing. *See id.* §§ 410.151–.169.

At the third tier of the disposition process, a party may seek review of the outcome of the contested case hearing by an administrative appeals panel. *See id.* §§ 410.201–.208. To do this, a party must file a written request not later than the fifteenth day after the contested case decision is entered. *See id.* § 410.202. The decision of the appeals panel is considered final unless judicial review is sought. *See id.* § 410.205.

An aggrieved party may seek judicial review of the appeals panel decision. *See id.* §§ 410.251–.308. Suit must be filed "not later than the 40th day after the date on which the decision of the appeals panel was filed." *See id.* § 410.252. If a court of last resort reverses or modifies an appeals panel award, then the insurance carrier may seek reimbursement for any overpayments from the Subsequent Injury Fund ("SIF") [1]. *See id.* § 410.205(c).

## B. *Gullett's Workers' Compensation Claim*

On January 8, 1996, Gullett was injured at work. He filed a workers' compensation claim with Continental. From July 1996 to November 1996, Continental paid Gullett TIB. Gullett returned to work with some restrictions on his activity on July 8, 1996. For a time, therefore, Gullett was receiving both pre-injury wage and TIB. A representative at Continental, Carmen Munoz, testified that she mistakenly thought that the medical work restrictions caused a reduction in Gullett's income. Continental overpaid benefits to Gullett between July 1996 and November 1996, totaling $8,619.54.

On May 29, 1997, the TWCC held a benefit review conference to determine whether Gullett's impairment rating was too high and whether Continental was entitled to recover the amount that was overpaid to Gullett during the TIB period. Continental alleged that Gullett failed to contact them when he returned from work, and as a result, Gullett was liable for fraud. The benefit review officer ("BRO") found that Gullett was being overcompensated, and as a result, the BRO ordered that Continental cease benefit payments. The BRO also affirmed Gullett's 27% impairment rating previously established by a TWCC-appointed doctor.

A contested case hearing ("CCH") was held on October 10, 1997.[2] At this hearing, the parties stipulated that there was an overpayment. Gullett argued, however, that Continental could only recover overpayment when the claimant has committed fraud. Continental responded by claiming

---

1. The SIF is a statutorily created fund that is designed to provide additional income benefits that are beyond the scope of the Texas Workers' Compensation Act. *See Subsequent Injury Fund v. Service Lloyds Insurance Co.,* 961 S.W.2d 673, 675 (Tex.App.—Houston [1st Dist.] 1998). In 1993, the Texas legislature amended the Texas Workers' Compensation Act to allow reimbursement for carriers who had made workers' compensation overpayments. *Id.*

2. The hearing was originally scheduled for September 9, 1997 but was continued until October 10th.

that it could recover overpayment even if there was a mistake. Furthermore, Continental alleged that Gullett had committed fraud, as he tried to hide the amount of wages he was receiving and failed to properly inform Continental about his return to work at pre-injury wages.

On November 5, 1997, the CCH officer issued his final opinion. The officer concluded that Continental mistakenly made overpayments of temporary income benefits to Gullett. The hearing officer did not, however, make an explicit finding rejecting Continental's fraud claim. In terms of the overpayment, the hearing officer held that Continental was entitled to offset the sum of $8,619.54 plus interest from Gullett's accrued but unpaid impairment income benefits. Continental was ordered to pay Gullett's remaining accrued compensation pay in a lump sum. *See* Corrected Brief of Continental Casualty Co. [Doc. # 13] ("Appellant's Brief"), at Appendix 3. Continental was also to begin paying Gullett's weekly impairment income benefits. Last, the hearing officer held that the 27% impairment rating was correct.

After this hearing, Continental began paying Gullett his compensation pay and impairment income benefits. Munoz calculated Gullett's accrued benefits as of November 13, 1997, concluding that Continental owed Gullett $8,064 for workers' compensation benefits. Munoz then deducted the carrier's overpayment of $8,619.54. To satisfy the remainder of Gullett's overpayment, Continental made a deduction from three of Gullett's weekly impairment income benefit payments.

On November 20, 1997, Continental appealed to the TWCC administrative appeals panel. Continental argued that Gullett's 27% impairment rating "is clearly against the weight of the evidence." *See* Continental's Appeal, Appellant's Designated Record on Appeal, Exhibit B–7, at 9. Continental requested that Gullett's impairment rating be lowered. Continental also contended that the hearing officer incorrectly concluded that Continental had

made the overpayment of temporary benefits because of an "inadvertent mistake." *Id.* at 6. The hearing officer, Continental argued, ignored Continental's contention that Gullett had fraudulently received his overpayments. Thus, Continental requested that the appeals panel address Continental's allegations of fraud. *Id.* at 7.

On November 25, 1997, Gullett responded to Continental's request for appellate review with his own appeal. *See* Appellee Gullett's TWCC Appeal, Appellant's Designated Record on Appeal, Exhibit B–8. Gullett argued that the hearing officer erred in holding that the $8,619.54 overpayment could be credited towards Continental's liability for accrued impairment income benefits and requested that the appeals panel reverse this finding. *Id.* at 4.

On January 5, 1998, the appeals panel upheld the CCH decision.

On February 17, 1998, Continental's attorney filed a petition in Harris County District Court, appealing the appeals panel's ruling. *See* Original Complaint, Appellant's Designated Record on Appeal, Exhibit B–12. Continental argued that Gullett's impairment rating was against the weight of the available evidence. *Id.* at 3. It also reasserted its claim that it was entitled to recoupment due to Gullett's "attempt to defraud the Carrier and/or . . . on his failure to notify the Carrier that he was working during the time-periods in question." *Id.* at 4. Continental's requested relief included the lowering of Gullett's impairment rating and an explicit finding of fraud. *Id.*

Continental subsequently filed two amended petitions in state court. On June 2, 1998, Continental filed a first amended petition that was essentially the same as its original petition for purposes of this appeal. *See* First Amended Complaint, Appellant's Designated Record on Appeal, Defense Exhibit 16. On July 7, 1998, Continental filed a second amended petition in which Continental dropped its request con-

cerning Gullett's alleged fraud. *See* Second Amended Petition, Appellant's Designated Record on Appeal, Exhibit B–15.

Meanwhile, in or about May or June 1998, during pendency of the state court case, Gullett filed and pursued additional administrative proceedings to obtain the next phase of workers' compensation, supplemental benefits. Continental did not oppose Gullett's first request for supplemental benefits, and Gullett received them for three months. When Gullett reapplied in September 1998, however, Continental responded by complaining to the TWCC in a letter dated November 20, 1998, that Gullett had declared bankruptcy and had filed an adversary proceeding complaining of Continental's actions with regard to Gullett's workers' compensation case. Appellant's Brief, Appendix 1–A at 1. Continental requested that the TWCC either stay Gullett's request for supplemental benefits or require Gullett to file a response regarding the effects of his bankruptcy case on these underlying workers' compensation proceedings. *Id.* Continental defended against Gullett's claim by arguing: "Mr. Gullett cannot have it both ways. He cannot seek workers' compensation benefits from the carrier, yet complain when the Carrier defends against his entitlement to the same." *Id.* at 2.

A benefit review conference was held on December 3, 1998. The review officer's decision was issued soon after, and he denied Gullett's request for benefits.

### C. *Gullett's Bankruptcy Proceeding*

Gullett and his wife filed their Chapter 13 bankruptcy on October 10, 1997. Gullett did not inform either Continental or the TWCC's CCH officer about his bankruptcy and the CCH proceeded as scheduled on October 17, 1997. After the CCH, Gullett's bankruptcy attorney, John Mastrangelo, sent a letter to Continental dated October 30, 1997, informing the carrier of the bankruptcy and requesting that the carrier cease all "set-offs" from Gullett's compensation pay. *See* Appellant's Desig-

nated Record on Appeal, Exhibit B–3. Munoz received this letter shortly thereafter and forwarded it to Continental's counsel, Jeffrey Diamond. Diamond responded by sending a letter dated November 11, 1997, to Gullett's counsel stating that all TIB had been paid in full and no benefits were being withheld during the 90 days preceding bankruptcy because of the original benefit review officer's suspension order that Continental had overpaid benefits and that Continental cease TIB payments. *See* Appellant's Designated Record on Appeal, Exhibit B–8.

The CCH decision was issued on November 5th, but not received by Continental until on or about November 12th. Both Gullett and Continental appealed the CCH ruling and neither informed the TWCC appeals panel about Gullett's bankruptcy case. Gullett argued on appeal that the TWCC should follow an old appeals panel decision that a carrier cannot get recoupment unless the overpayment is caused by the claimant's fraud.

The TWCC appeals panel affirmed Gullett's impairment rating and the holding of recoupment without requiring a fraud finding. Continental filed its state court action on February 17, 1998, appealing the impairment ruling. In the petition, anticipating a cross appeal, Continental also alleged Gullett had engaged in fraud.

On March 27, 1998, Gullett filed an adversary proceeding under 11 U.S.C. § 362(a) and (h), alleging that Continental's filing of the state court action violated the automatic stay under 11 U.S.C. § 362(a). Gullett expressed particular concern with the allegations of fraud contained in the state court complaint and its first amendment. *See* Richard Gullett's Second Amended Complaint to Enforce the Provisions of 11 U.S.C. § 362, Appellee's Designated Record on Appeal, A–4, at 5–6.

On May 20, 1998, Continental moved for relief from the automatic stay in order to defend against Gullett's workers' compen-

sation administrative appeal. A hearing on the motion was set for February 12, 1999.

On December 7, 1998, in response to Continental's November 20, 1998 letter to the TWCC related to Gullett's second request for supplemental benefits, Gullett filed a motion for temporary restraining order in order to stop Continental's alleged attempt to stay the TWCC proceedings. The Bankruptcy Court expedited the trial on the adversary proceeding and set the competing motions for the same time. Trial was held during three days in July and December 1998. Four witnesses testified: Gullett, his bankruptcy attorney (John Mastrangelo) and the opposing lawyers in the workers' compensation appeal (Jeff Diamond, attorney for Continental, and Bernardo Eureste, attorney for Gullett). The two workers' compensation attorneys testified about the administrative and state court proceedings and explained Texas workers' compensation law.

On January 6, 1999, the Bankruptcy Court issued an opinion and judgment, holding that Continental had violated the automatic stay in four respects:

(1) Continental's withholding of Gullett's accrued benefits on November 13, 1997 and subsequent deduction of amounts from Gullett's weekly impairment income benefits to satisfy the $8,619.54 overpayment;

(2) Continental's appeal to the TWCC appeals panel;

(3) Continental's state district court filings; and

(4) Continental's November 20, 1998 letter to the TWCC.

See Amended Order, Appellant's Brief, Exhibit 1, at 20. The Court found that each of these violations warranted a $10,000.00 "sanction" and awarded Gullett a total of $40,000.00 in punitive damages. Id. at 21.[3] The Court also awarded Gullett's attorney, S. John Mastrangelo, $30,258.00 in attorney's fees.[4] Id. at 20. In addition, the Court, without explanation, ordered Continental to return $8,619.54 as "compensatory damages." Id. at 21; see Final Judgment, Appellant's Designated Record on Appeal, Exhibit A–15.

### D. Continental's Issues on Appeal

Continental presently appeals from the Amended Order and final judgment on three separate issues. See 28 U.S.C. § 158(a)(1). First, Continental challenges the Bankruptcy Court's holding that Continental was not entitled to recoupment under state law. Continental contends that the Bankruptcy Court erred because:

(a) its review of the state agency's final decision is precluded by the doctrine of res judicata, deference, and issue preclusion, and by the Rooker–Feldman doctrine;

(b) the debtor, Gullett, did not plead for or offer evidence supporting federal appellate review of a state decision; and

(c) the Bankruptcy Court ignored the ample precedent cited by the state agency and, instead, misapplied Texas law.

See Appellant's Brief, at 2. Second, Continental challenges the Bankruptcy Court's holding that its pleadings in the state court

---

**3.** The Bankruptcy Court explicitly discussed and applied punitive damages standards in imposing the $40,000.00 "sanction." The Bankruptcy Court then stated "[t]en thousand per incident is a conservative sum to assess against CCC, but perhaps notice will be taken with regard to future actions in such cases." Amended Order, at 21.

**4.** Mastrangelo submitted two invoices that show his fees billed in connection with Gul-

lett's adversary proceeding. See Attorney's Fees Billing for Attorney John Mastrangelo, Appellant's Designation of Record on Appeal, Plaintiff's Exhibit 6. According to these invoices, Mastrangelo rendered 152.27 hours of legal work at $200 per hour. The Bankruptcy Court held that all fees in the invoices were reasonable and necessary. Amended Order, at 20.

petition, and subsequent amendments, violated the automatic stay. Continental argues that the Bankruptcy Court erred in this respect because:

  (a) as a matter of Texas law, in the state-court workers' compensation appeal, Continental cannot recover a personal judgment against Gullett;

  (b) Continental was entitled to recoupment;

  (c) Continental's request for attorney's fees was a request for court approval of its workers' compensation attorney's fees that, under Texas law, could only be paid by Continental and could never be paid by Gullett;

  (d) the allegation that Continental was entitled to recoup benefits because it overpaid due to fraud or lack of proper notice was an error-preserving defensive pleading that could not, as a matter of Texas law, have caused a personal judgment against Gullett;

  (e) based on waiver, estoppel, and equity, Gullett cannot pursue a claim against Continental while preventing Continental from defending itself, and

  (f) initiating a defensive lawsuit does not violate the automatic stay.

*See id.* Third, Continental challenges the Bankruptcy Court's award of attorney's fees and punitive damages against Continental for violating the stay. Continental contends that the Bankruptcy Court erred in making these awards because:

  (a) Continental did not violate the automatic stay;

  (b) there were no injury and actual damages arising from the alleged violations; and

  (c) the awards for attorney's fees and punitive damages are excessive, are not appropriate, and are not justified.

*See* Appellant's Brief, at 4. The Court reaches only certain of these issues.

## II. *STANDARDS OF APPELLATE REVIEW*

    In bankruptcy appeals, the district court must carefully review the Bankruptcy Court's findings. However, reviewing courts must accept the findings of fact of the Bankruptcy Court unless the findings are clearly erroneous. *See In re Coston (Coston v. Bank of Malvern),* 987 F.2d 1096, 1098–99 (5th Cir.1992) (citing *Wilson v. Huffman (In re Missionary Baptist Foundation of America),* 818 F.2d 1135, 1142 (5th Cir.1987)); *see In re Niland,* 825 F.2d 801, 805 (5th Cir.1987). Also, "due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses." Bankr.R. 8013. Circuit courts are guided by the rule that "[s]trict application of the clearly erroneous rule is particularly important whe[n] the district court has affirmed the Bankruptcy Court's findings." *Missionary Baptist Foundation,* 818 F.2d at 1142.

    The Bankruptcy Court's conclusions of law are reviewed *de novo. In the Matter of United States Abatement Corporation a/k/a USA Corporation (McCarty v. Mobil Exploration and Producing U.S., Inc.),* 79 F.3d 393, 397–98 (5th Cir.1996) (citing *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enter., Ltd. III,* 994 F.2d 1160, 1163 (5th Cir.1993)). When reviewing mixed questions of law and fact, the district court must give deference to the factual determinations made by the Bankruptcy Court unless clearly erroneous, but the district court "must independently determine the ultimate legal conclusion adopted by the bankruptcy judge on the basis of the facts found." *In re Bufkin Bros., Inc.,* 757 F.2d 1573, 1577–78 (5th Cir.1985) (citation omitted).

    "The Bankruptcy Court's decision to impose sanctions is discretionary, therefore we review the exercise of this power for abuse of discretion." *Id.* (citing *Shipes v. Trinity Indus.,* 987 F.2d 311, 323 (5th

Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993)).

■ Finally, an appellate court reviews the ultimate award of attorneys' fees under an abuse of discretion standard. *See, e.g., In re Anderson,* 936 F.2d 199, 203 (5th Cir.1991).

## III. *DISCUSSION*

### A. *Recoupment*

■ Continental's entitlement to repayment of the $8,619.54 is a recoupment. In order to characterize a particular withholding as a "recoupment," a court must find that:

(1) there has been some type of overpayment made to the debtor, and

(2) both the creditor's claim and the amount owed to the debtor arise from a single contract or transaction.

*See Kosadnar,* 157 F.3d 1011, 1014 (5th Cir.1998). The Fifth Circuit has not explicitly defined "same transaction," as it has held that "[g]iven the equitable nature of the [recoupment] doctrine ... courts have refrained from precisely defining the same-transaction standard, focusing instead on the facts and equities of each case." *Id.* at 1015. Other circuit courts have added that recoupment should be allowed only in those cases in which "both debts ... arise out of a single transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Malinowski v. New York State Department of Labor,* 156 F.3d 131, 132 (2nd Cir.1998); *U.S. on Behalf of United States Postal Service v. Dewey Freight System, Inc.,* 31 F.3d 620, 623 (8th Cir. 1994).

An analysis of the facts in *Kosadnar* helps further illustrate this rule. In *Kosadnar,* the debtor's employer discovered that it had previously overcompensated the debtor for unearned insurance commissions awarded in 1994. *See Kosadnar,* 157 F.3d at 1013. The debtor and his employer agreed that the employer would recover this overpayment through weekly deductions in the debtor's salary. On June 8, 1995, the debtor declared bankruptcy. His employer, however, continued to withdraw funds from debtor's weekly salary. The Fifth Circuit held that the post-petition salary and the pre-petition overpayments arose out of the same transaction and thus constituted recoupment. *Id.* at 1014.[5]

The circumstances in the case at bar reveal that Continental's efforts to obtain the $8,619.54 it had overpaid Gullett were acts of recoupment. Continental overpaid Gullett TIB totaling $8,619.54 under a workers' compensation insurance policy. At the time Continental took the actions in issue concerning the $8,619.54, Gullett was asserting a claim against Continental for impairment income benefits under the same workers' compensation policy. Both obligations arose out of Continental's insurance contract. Thus, *Kosadnar* is dispositive authority.

In addition, Gullett himself pressed forward with the TWCC administrative proceedings without informing either Continental or the agency of his own bankruptcy filing until after the contested hearing (when Gullett then told only Continental, not the agency). Gullett thus took part in the second level administrative proceedings to try to improve his position—in the hope he would be awarded the $8,619.54 overpayment. Un-

**5.** This case is factually distinguishable from *Malinowski.* There the debtor originally filed a claim for unemployment benefits in January 1994. *See Malinowski,* 156 F.3d at 132. Soon after, the New York Department of Labor determined that the debtor was ineligible for benefits and was overpaid $2,072. *Id.* On January 30 1995, the debtor declared bankruptcy. In January 1996, the debtor filed another claim for unemployment benefits and was found eligible. The New York Department of Labor, however, deducted the $2,072 overpayment in 1994 from the debtor's benefits. The Second Circuit held that the two claims for unemployment were based upon different transactions and did not give rise to recoupment. *Id.* at 134.

der the facts in this case, "it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations." *Malinowski*, 156 F.3d at 132; *see Dewey Freight System, Inc.*, 31 F.3d at 623.

The Court concludes, therefore, that the Bankruptcy Court's holding that Continental does not have a right under Texas law to recoup its $8,619.54 overpayment is contrary to Texas law.[6]

■■■■■ In addition, and even more significant, the Bankruptcy Court's conclusion that Continental was not entitled to exercise its recoupment rights contravenes the *Rooker/Feldman* doctrine. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) ("*Rooker–Feldman* doctrine"). Federal courts lack jurisdiction to entertain collateral attacks on state court judgments. *See Davis v. Bayless*, 70 F.3d 367, 375–76 (5th Cir.1995); *Liedtke v. State Bar of Texas*, 18 F.3d 315, 317 (5th Cir.), *cert. denied*, 513 U.S. 906, 115 S.Ct. 271, 130

L.Ed.2d 189 (1994). This doctrine generally extends to state administrative proceedings. *See Scott v. Flowers*, 910 F.2d 201, 206 (5th Cir.1990) (extending the *Rooker–Feldman* doctrine to eliminate federal district court jurisdiction over the claims challenging acts of state agencies of a judicial nature over which state courts have review); *Thomas v. Kadish*, 748 F.2d 276, 278 (5th Cir.1984), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3531, 87 L.Ed.2d 655 (1985) (finding that federal courts have no jurisdiction to review the administrative process of the State Bar).

A TWCC appeals panel decided that Continental could recoup the $8,619.54 overpayment.[7] *See* Appeals Panel Decision, dated Jan. 9, 1998, Appellant's Designated Record on Appeal, Exhibit B–11. In his Second Amended Complaint, Gullett does not argue that this decision was improper. Nor does he request that the Bankruptcy Court reverse this finding. *See* Gullett's Second Amended Complaint, Appellant's Designated Record on Appeal, Exhibit A–12. The Bankruptcy Court's ruling improperly reverses that final administrative decision.

---

**6.** The relevant Texas authorities are sparse and unclear. The Bankruptcy Court cited two appeals decisions of the TWCC. In the first case, the carrier miscalculated the employee's average weekly rate by including the employee's concurrent employment within this weekly rate. *See* Appeal No. 92291, 1992 WL 448316 (Tex.Work.Comp. Comm'n 1992). The carrier argued that it should be able to deduct in the benefits calculation the amount it overpaid employee in the six months that it erroneously included the employee's concurrent employment. The TWCC appeal panel held, however, that the carrier was not entitled to deduct this amount, as there was no legislative intent in the Texas Workers' Compensation Act which warranted such a recoupment.

Another TWCC appeals panel decision issued six months later allowed recoupment under different circumstances. *See* Appeal No. 94135, 1994 WL 102761 (Tex.Work.Comp. Comm'n 1994). In that case, the carrier was not informed of the employee's return to work. As a result, the carrier continued to pay TIBS to the employee even though she started to receive pay at her pre-injury rate.

The Appeals Panel cited an internal memorandum from the Executive Director of the TWCC that stated that "a claimant should never receive more benefits than entitled to under the law." *Id.* at *2. It then held that the carrier could recoup the overpayment. The Bankruptcy Court concluded that Appeal No. 92291 was applicable to the facts of this case, apparently based on the Bankruptcy Court's view of the facts of the overpayment, and therefore held that recoupment was not involved, notwithstanding the contrary TWCC appeals panel decision in the case at bar. This conclusion contravened the TWCC's view that, like in TWCC Appeal No. 94135, the employee had no legal right to receive payment at the time the payments in issue.

**7.** The contested case hearing officer held that Continental could "offset" its $8,619.54 overpayment. *See* Decision and Order, Appellant's Designated Record on Appeal, Exhibit B–4. The appeals panel, on the other hand, characterized the matter as "recoupment." *See* Appeals Panel decision, Exhibit B–11, at 4. Nevertheless, since neither party has addressed this linguistic discrepancy, the Court finds it immaterial.

### B. *The Automatic Stay*

The Bankruptcy Code provides for an automatic stay once a bankruptcy petition is filed. *See* 11 U.S.C. § 362(a). This stay applies to:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

*Id.* In Gullett's adversary proceeding, Gullett alleged generally that Continental violated 11 U.S.C. § 362(a), but did not specify any precise theories.[8] Continental did not file a motion for a more definite statement, and the Bankruptcy Court construed Gullett's claims to include challenges under 11 U.S.C. §§ 362(a)(1), (2), (3), (6) and (7).

### C. *Alleged Violations of the Automatic Stay*

The Bankruptcy Court held that Continental violated the automatic stay in four ways. This Court concludes that none of these four acts constitutes a violation of the automatic stay.

■ *Reimbursement of $8,619.54 Overpayment.*—As stated above, Continental's recovery of the $8,619.54 overpayment constitutes a recoupment, not a "setoff," under Texas law. Any actions related to this recoupment cannot, as a matter of law, violate the automatic stay. *See Kosadnar,* 157 F.3d at 1016; *Holford v. Powers,* 896 F.2d 176, 179 (5th Cir.1990). Thus, the Bankruptcy Court erred in concluding that Continental's deduction of $8,619.54 from payments otherwise due to Gullett was a violation of § 362(a)(7) (prohibition of "setoffs") or any other provision of § 362(a).

■ *Appeal to the TWCC Appeals Panel*—The Court likewise concludes that Continental's administrative cross-appeal to the TWCC appeals panel did not violate the automatic stay to the extent Continental sought to protect its right of recoupment. Since actions taken with respect to recoupments do not violate the automatic stay, *see Kosadnar,* 157 F.3d at 1016 (5th Cir.1998), and since Continental's appeal regarding its allegation of fraud was related to the legal standard asserted by Gullett governing rights of recoupment, the

---

**8.** In his third amended complaint, Gullett does reference 11 U.S.C. § 362(a)(1). His legal theory, however, is unclear. *See* Gullett's Second Amended Complaint, Appellant's Designated Record on Appeal, Doc. A–12.

administrative appeal with respect to Continental's recouping Gullett's overpayment is not sanctionable conduct.

***Continental's District Court Appeal— Filing of the Original Petition and Amendments Thereto Challenging Impairment Rating.***—For the same reasons, the Court concludes the holding that Continental violated the automatic stay by filing and prosecuting its appeal in state court as to the recoupment cannot stand. Gullett sought relief concerning the allegations by Continental relating to the recoupment issues, and the Bankruptcy Court rested its findings and conclusions on that conduct. Since Texas law gave Continental the right of recoupment that was not barred by the automatic stay, Continental's conduct in preserving that right did not violate § 362(a).

■ ***Continental's Letter to TWCC.***— The Bankruptcy Court concluded that Continental's November 20, 1998 letter to the TWCC concerning Gullett's request for supplemental benefits violated the automatic stay.[9] The court based this conclusion on a factual finding that "Diamond's letter to the TWCC on November 20, 1998 was intended not to defend against Gullett's claims for future benefits, but to stop them entirely." *Id.* at 8, 20. A reading of Diamond's entire letter establishes that this finding is clearly erroneous. While Continental's letter was inartful, it did not violate any provision of the automatic stay. Diamond's letter stated that

> it may be advisable that Mr. Gullett's workers' compensation case be stayed and that the Carrier be relieved of any obligation to pay Mr. Gullett, any workers' compensation benefits or to participate in any workers' compensation proceeding during the pendency of his bankruptcy. In the alternative, the Carrier demands that the TWCC require Mr. Gullett to state his position, in writing, regarding the effects, if any, of his

bankruptcy proceedings on his claim for workers' compensation benefits under the Texas Workers' Compensation Act. In other words, Mr. Gullett cannot have it both ways. He cannot seek workers' compensation benefits from the Carrier, yet complain when the Carrier defends against his entitlement to the same. In order to prevent this unfair and unjust result and/or any accusations regarding the same, Mr. Gullett's case should be stayed or he should be required to state his position in writing regarding these issues prior to workers' compensation proceedings moving forward. If Mr. Gullett's arguments regarding his bankruptcy and the applicability of the stay are taken to the logical conclusion, the TWCC would also be in violation of the stay by participating and conducting any workers' compensation proceedings in Mr. Gullett's case.

When this letter was written, Continental had already filed its motion to lift the stay and a hearing was not scheduled until February 1999. Continental had an obligation to inform the TWCC of the automatic stay. While Continental's phrasing was more aggressive than was appropriate, the letter in essence communicated that a dispute existed concerning the effect of the bankruptcy automatic stay, and that a stay of the administrative proceeding was necessary. Continental did not argue in the letter that Gullett was not entitled to benefits on the merits of his claim. Rather, Continental's letter sought clarification of Gullett's position, due to Continental's understandable concern with Gullett's inconsistent behavior of filing an adversary proceeding complaining that Continental violated the stay while seeking a TWCC determination on supplemental benefits. Continental essentially acted defensively through its November 20 letter. Continental did not commence or continue any action to re-

---

9. The Bankruptcy Court did not identify which provisions of 11 U.S.C. § 362(a) the letter violated.

cover a pre-petition claim, did not seek to enforce any judgment, did not act to obtain possession of any property of the estate, did not act to collect or recover on any pre-petition claim and did not seek an improper "set-off." *See* 11 U.S.C. § 362(a)(1), (2), (3), (6), (7). The letter therefore did not violate the automatic stay.

### D. *Award of Attorney's Fees and Other Damages*

*The $8,619.54 Sanction.*—The Bankruptcy Court awarded compensatory damages to Gullett premised on an incorrect classification of Continental's recoupment action regarding the $8,619.54 overpayment. The $8,619.54 award was an abuse of discretion and contravenes the TWCC's final determination that Continental was entitled to recoupment. This award is therefore reversed.

*Monetary Sanctions.*—In the adversary proceeding, Gullett sought monetary damages as a sanction under 11 U.S.C. § 362(h), specifically for Continental's intentional infliction of emotional distress resulting from (i) Continental's prosecution of the district court action and (ii) Continental's November letter to the TWCC concerning the supplemental benefits claim. *See* Gullett's Second Amended Complaint to Enforce the Provisions of 11 U.S.C. § 362, and to Recover Damages Including Punitive Damages, Pursuant to 11 U.S.C. § 362(h), Appellant's Designated Record on Appeal, Exhibit A–12. The Bankruptcy Court apparently awarded damages on this theory.

Because this Court concludes that there were no violations of the automatic stay on the grounds articulated by the Bankruptcy Court, the Court vacates the Bankruptcy Court's award of $40,000.00 punitive damages.

*Attorney's Fees.*—In addition to punitive damages, the Bankruptcy Court awarded Gullett in excess of $30,000.00 in attorney's fees. This award must also be vacated since the § 362 violations on which that award is premised have been reversed.[10]

### IV. *CONCLUSION AND ORDER*

For the reasons discussed above, the Court concludes that the Bankruptcy Court's Amended Order must be reversed. By doing so, the Court does not condone Continental's conduct. A far more preferable course would have been for Continental to have filed its motion to lift the automatic stay before resorting to self-help and sought an emergency hearing on that motion, particularly since the overpayment for which recoupment was sought was not a substantial sum to Continental and had occurred many months earlier. It is therefore

**ORDERED** that the Amended Order of the Bankruptcy Court is **REVERSED.**

---

**10.** There is also a serious question as to whether the requested fees were in fact reasonable and necessary under applicable standards.