OPINION OF THE COURT
Gerard M. Weisberg, J.
This claim seeks a refund of premiums paid to the State Insurance Fund (Fund). On October 4, 1974, claimant secured a policy of workers’ compensation and employers’ liability insurance from the fund in connection with the commence *363 ment of a tank cleaning business. Claimant paid an estimated deposit premium of $615 to cover the period from October 4, 1974 to October 4, 1975. This figure represented 50% of the total yearly premium computed from an estimated $10,000 in annual payroll. Subsequently, on August 13, 1975, claimant was billed the sum of $513 as a deposit premium for the annual renewal of the policy, which claimant paid on August 23, 1975. By registered letter dated October 30, 1975, claimant notified the Fund that since October 4, 1974 he had never had any payroll, and that he wished to cancel the policy and secure a refund of all premiums paid. The policy was canceled as of December 13, 1975, but no refund was forthcoming.
Meanwhile, on November 20, 1975, claimant was billed the sum of $1,282.95 to cover the period from October 4, 1974 to July 1, 1975. This bill was not an estimate, but was rather the actual earned premium for the covered period based upon a payroll of $10,456. Claimant did not pay this amount. However, claimant had already paid a total of $1,128 in deposit premiums of the actual premium of $1,282.95, leaving a deficit of $154.95 still owed to the Fund. Claimant now seeks the return of the $513 premium payment, contending that: (1) he had no employees at any time, and (2) the deposit premium for 1975-1976 cannot be applied to his bill for the previous year.
The State’s witness, Louis Grabkowicz, an associate payroll auditor at the Fund, testified that on October 7, 1975, Mr. Constantino appeared at his office and voluntarily produced his payroll book. Mr. Grabkowicz prepared an audit report which bears Mr. Constantino’s signature at the bottom thereof. Claimant had previously told an auditor that he had no employees, but on October 7, 1975, claimant admitted to Mr. Grabkowicz that, in fact, he did have employees. At trial, claimant again stated that he had never had any employees, and testified that he signed a blank piece of paper, not a payroll audit.
Mr. Constantino’s testimony in this regard was highly incredible. To accept such testimony would require the court to believe that the audit prepared by Mr. Grabkowicz was a total fabrication and was prepared not from claimant’s payroll book, but rather from Mr. Grabkowicz’s imagination. The State’s witness possessed no financial stake in either the results of the audit or the outcome of the litigation and, consequently, had no motive to lie. While Mr. Constantino *364 attempted to explain his purported signing of a blank piece of paper on the theory that he was "green”, i.e., a novice in the tank cleaning field, claimant had previously engaged in the music and entertainment business, which suggests that claimant was not "green” with regard to business affairs generally. The court finds that claimant did have employees, and therefore accepts the Fund’s computation of claimant’s earned premium for the period October 4, 1974 to July 1, 1975 which, as previously indicated, exceeded the total premiums paid by claimant.
Concerning the deposit premium of $513, if considered separately, there is no question but that claimant would be entitled to its return since the policy was canceled on December 13, 1975. The issue is whether in the present posture of this lawsuit, the $513 may be retained by the State to defray the premium which claimant still owes for the previous year. Claimant contends that it may not because the State failed to assert a counterclaim.
Since this claim accrued prior to January 1, 1976, the State was not required to answer. (See former 22 NYCRR 1200.14.) Under this section, the State was absolved both from denying the allegations of the claim and from pleading affirmative defenses. (Rafferty v State of New York, 172 Misc 870, affd 261 App Div 80; Easley v State of New York, 10 Misc 2d 370.) The State was however obliged to file a verified counterclaim if it sought to assert one. (Former 22 NYCRR 1200.15.) The question is whether the State’s evidence of an unpaid premium for 1974-1975 was provable under an affirmative defense (which need not have been pleaded because of former 22 NYCRR 1200.14), or, on the contrary, whether it was necessary to allege this debt in a separate counterclaim.
Significantly, the State does not seek any affirmative relief; no judgment is demanded, and what is sought is an abatement of the plaintiff’s claim to the extent of the debt which claimant owes to the defendant. At common law, the State’s plea would have been one in recoupment, meaning: "a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another * * * such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. *365 (Rothensies v. Elec. Stor. Battery Co., 329 U. S. 296, 299; other authorites omitted.)” (Matter of National Cash Register Co. v Joseph, 299 NY 200, 203.) Unlike a setoff, recoupment was required to arise out of the same set of transactions as the claim. (James Talcott, Inc. v Winco Sales Corp., 14 NY2d 227.) Further, unlike a counterclaim, recoupment does not seek damages in excess of sums already possessed by the defendant or in excess of those demanded by the complaint. It is manifestly pro tanto a defensive use of a cause of action possessed by the defendant. (Seibert v Dunn, 216 NY 237.)
It was held in Gillespie v Torrance (25 NY 306) that the defendant had the election to set up recoupment by way of answer and to forego his counterclaim if he chose. The right to plead recoupment as a defense remains intact (Blog v Burden & Co., 238 App Div 634), notwithstanding the subsequent absorption of the common-law doctrines of setoff and recoupment by the present statutory definition of counterclaim. (See CPLR 3019; Deeves & Son v Manhattan Life Ins. Co., 195 NY 324, mot for rearg den 195 NY 607; Getlan v Hofstra Univ., 41 AD2d 830, mot for lv to app granted 42 AD2d 692, app dsmd 33 NY2d 646.) This point is illustrated by Rochester-Genesee Regional Transp. Dist. v Trans World Airlines (86 Misc 2d 1011), in which plaintiff ("RTS”) sued for unpaid rentals of $2,000 for transportation service furnished to the defendant ("TWA”). The latter asserted an affirmative defense that RTS’ bus had negligently struck its aircraft, causing it to sustain damages in the amount of $5,700. Plaintiff moved for summary judgment, contending that the affirmative defense was in the nature of a counterclaim which could not be maintained because of failure to comply with section 50-e of the General Municipal Law. Justice Livingston stated at page 1013: "TWA is not counterclaiming for the excess of the $5,700 over the $2,000 owed by TWA to RTS. In essence it has abandoned its claim for damages. However, it is unnecessary for TWA to perfect a valid claim under the General Municipal Law and Public Authorities Law against RTS in order to use the damages for recoupment purposes.”
The case at bar is closely analogous since the State does not seek to recover the difference between the deposit premiums paid and the actual premium assessed. It has merely put forward as a defense its own superior right to the funds now in its possession based upon a valid payroll audit. This it is entitled to do without the necessity of filing a counterclaim.
*366 The court has considered claimant’s remaining arguments and finds them to be without merit.
Accordingly, the claim is dismissed.