129 F.3d 93
 31 Bankr.Ct.Dec. 865, Bankr. L. Rep. P 77,538
 In re: Richard L. McMAHON, a/k/a McRich Foods, Debtor.
NEW YORK STATE ELECTRIC AND GAS CORPORATION, Plaintiff-Appellant,
v.
Richard L. McMAHON, a/k/a McRich Foods, Debtor-Appellee.
 No. 1140, Docket 96-5072.
 United States Court of Appeals,
Second Circuit.
 Argued March 6, 1997.
Decided Nov. 4, 1997.
 
 James M. Hayes, Hinman, Howard & Kattell, LLP, Binghamton, NY, for Plaintiff-Appellant.
 Allan J. Bentkofsky, Bentkofsky, Simmonds & Spano, LLP, Auburn, NY, for Debtor-Appellee.
 Russell R. Johnson III, Richmond, VA (Paul B. Phinney III, Pearl River, NY, Amicus Curiae from Utility Companies in Florida, Indiana, Kentucky, Maryland, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Virginia, Washington, DC, and West Virginia.)
 Before: WALKER, LEVAL and WOOD, Jr.,* Circuit Judges.
 JOHN M. WALKER, Jr., Circuit Judge:
 
 
 1
 This case presents two questions. First, whether the bankruptcy and district courts erred in declaring NYSEG's post-petition application of debtor's pre-petition utility deposit to the debtor's pre-petition utility debt to be a setoff subject to the automatic stay of 11 U.S.C. § 362 instead of a recoupment not subject to the automatic stay. Second, whether the bankruptcy court abused its discretion in awarding the debtor actual damages under 11 U.S.C. § 362(h). We hold that NYSEG's post-petition application of the pre-petition utility deposit to debtor's pre-petition utility debt was a recoupment not subject to the automatic stay and reverse the award of actual damages under 11 U.S.C. § 362(h).
 
 Background
 
 2
 The facts of this case are similar to many "utility deposit" cases. Richard L. McMahon d/b/a/ McRich Foods ("debtor") operated a diner in Jordan, New York. As a condition of receiving utility service from NYSEG, debtor paid a $6,000 deposit to NYSEG on April 4, 1994. On April 10, 1995, debtor filed a petition under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court, Northern District of New York. Debtor was delinquent in his payments to NYSEG each of the fifteen months prior to filing his petition and on eight separate occasions received a shut-off notice. At the time of filing, debtor was indebted to NYSEG in the amount of $14,386.83. On May 16, 1995, knowing of debtor's petition and without permission from the bankruptcy court, NYSEG applied the deposit of $6,000 with accrued interest to this unpaid balance. Pursuant to 11 U.S.C. § 366(b), NYSEG also requested an additional deposit from debtor as "adequate assurance" of payment of post-petition utility charges. Debtor did not respond to NYSEG's request for adequate assurance but requested that NYSEG treat the pre-petition deposit as a post-petition deposit for post-petition utility service. NYSEG declined to do so. On June 7, 1995, NYSEG filed a separate proof of claim with the bankruptcy court for $8,970.62, the excess unpaid balance.
 
 
 3
 On June 16, 1995, upon an order to show cause requested by debtor, the bankruptcy court denied debtor's motion to apply his $6,000 pre-petition utility deposit as adequate assurance of payment under 11 U.S.C. § 366(b); ordered debtor to make a separate deposit with NYSEG as adequate assurance; ordered that if debtor did not make the deposit, NYSEG would be authorized to terminate service to the debtor without further application to the bankruptcy court; and ordered that, should debtor fail to pay further utility bills by their due date, upon notice NYSEG could terminate debtor's utility service. Debtor did not appeal any of these rulings.
 
 
 4
 On August 11, 1995, the bankruptcy court held that NYSEG's unilateral application of the $6,000 pre-petition deposit to debtor's pre-petition debt was a setoff in violation of the automatic stay of 11 U.S.C. § 362. The bankruptcy court nevertheless authorized the setoff, allowing NYSEG to retain both the deposit, as payment for $6,000 of pre-petition delivery of electricity, and its unsecured claim for the balance. Pursuant to 11 U.S.C. § 362(h), the bankruptcy court awarded debtor actual damages for NYSEG's violation of the automatic stay but declined to award punitive damages. Actual damages constituted $500 in attorneys' fees and reimbursement of costs and expenses not to exceed $50 in preparing the order to show cause. On June 5, 1996, upon notice of appeal by NYSEG, the district court affirmed the bankruptcy court's award of actual damages. NYSEG now appeals.
 
 Discussion
 I. Recoupment or Setoff
 
 5
 We review the district court's conclusions of law de novo and the bankruptcy court's findings of fact under a clearly erroneous standard. See Shugrue v. Air Line Pilots Assoc., Int'l (In Re Ionosphere Clubs, Inc.), 922 F.2d 984, 988 (2d Cir.1990).
 
 
 6
 A. The Importance of Recoupment versus Setoff
 
 
 7
 While the Bankruptcy Code does not mention recoupment explicitly, bankruptcy law does recognize the recoupment doctrine. The Supreme Court has stated:
 
 
 8
 It is well settled ... that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment. Recoupment permits a determination of the just and proper liability on the main issue and involves no element of preference.
 
 
 9
 Reiter v. Cooper, 507 U.S. 258, 265 n. 2, 113 S.Ct. 1213, 1218 n. 2, 122 L.Ed.2d 604 (1993) (internal citations and quotation marks omitted). Although the distinction between a recoupment and a setoff retains little significance under the modern rules for asserting counterclaims in pleading, the difference continues to be important in bankruptcy actions. While a "setoff" is subject to the automatic stay provision of 11 U.S.C. § 362, a recoupment is not. See Mercy Hosp. of Watertown v. New York State Dep't of Soc. Servs., 171 B.R. 490, 494 (N.D.N.Y.1994); In Re Village Craftsman, Inc., 160 B.R. 740, 746 (Bankr.D.N.J.1993). The automatic stay generally prohibits creditors from obtaining possession of or otherwise burdening any property of a bankrupt debtor without the permission of the bankruptcy court. See 11 U.S.C. § 362(a). NYSEG argues that its application of debtor's pre-petition utility deposit to its pre-petition debt was a recoupment not subject to the automatic stay. NYSEG therefore contends that its failure to request permission from the bankruptcy court before applying the deposit was proper. Debtor responds that NYSEG's action was a setoff and that this setoff, without the bankruptcy court's permission, violated the automatic stay.
 
 B. Recoupment under New York Law
 
 10
 "Recoupment and setoff rights are determined by nonbankruptcy law, which ordinarily is state law." In Re Village Craftsman, 160 B.R. at 746. The New York Court of Appeals succinctly set forth the doctrine of recoupment in National Cash Register Co. v. Joseph, 299 N.Y. 200, 86 N.E.2d 561, 562 (1949)(internal citations omitted):
 
 
 11
 Recoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered. Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.
 
 
 12
 In a more recent leading New York case, a plaintiff sought a refund of a deposit paid into the state workers' compensation fund. The fund refused to return the deposit and applied it to an outstanding bill that the plaintiff owed the fund. Holding the application to be a recoupment, the court stated that "[u]nlike a setoff, recoupment was required to arise out of the same set of transactions as the claim." Constantino v. State, 99 Misc.2d 362, 415 N.Y.S.2d 966, 969 (N.Y.Ct.Cl.1979). The court held that the right to plead recoupment and forego a counterclaim still existed under New York law. Id.
 
 C. Recoupment in Bankruptcy
 
 13
 Recoupment in bankruptcy may occur only within a single contract or transaction or a single set of transactions. Often, recoupment seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received. See Ashland Petroleum Co. v. Appel (In Re B & L Oil Co.), 782 F.2d 155, 158-159 (10th Cir.1986) (oil buyer could withhold payment to bankrupt oil company for post-petition deliveries to recoup amount of pre-petition overpayment); Waldschmidt v. CBS, Inc., 14 B.R. 309, 313-314 (M.D.Tenn.1981) (recording company may recoup royalty advances to musician from musician's post-bankruptcy record sales). See also Rakozy v. Reiman Constr. (In Re Clowards, Inc.), 42 B.R. 627, 628 (Bankr.D.Idaho 1984) (bankrupt contractor's suit under construction contract subject to recoupment of damages for alleged breach of the contract).
 
 
 14
 In light of the Bankruptcy Code's strong policy favoring equal treatment of creditors and bankruptcy court supervision over even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed. See In Re Public Serv. Co. of N.H., 107 B.R. 441, 444 (Bankr.D.N.H.1989).
 
 D. Utility Deposits
 
 15
 With this background in mind, we turn to the narrow question before us: whether a utility's post-petition application of a pre-petition utility deposit to a debtor's pre-petition utility debt is a setoff subject to the automatic stay of 11 U.S.C. § 362 or a recoupment. Some courts have held such an application to be a recoupment. See Brooks Shoe Mfg. Co. v. United Tel. Co., 39 B.R. 980, 982-984 (E.D.Pa.1984); In Re Public Serv. Co. of N.H., 107 B.R. at 444-447; Blasbalg v. Narragansett Elec. Co. (In Re Miner Indus., Inc.), 119 B.R. 6, 7-8 (Bankr.D.R.I.1990); In Re Norsal Indus., Inc., 147 B.R. 85, 88-89 (Bankr.E.D.N.Y.1992). Other courts have held the application to be a setoff. See In Re Village Craftsman, 160 B.R. at 745-747; In Re Cole, 104 B.R. 736, 738-741 (Bankr.D.Md.1989). The only court to analyze the issue applying New York's law of recoupment in a bankruptcy proceeding found the utility's actions to be a recoupment. See In Re Norsal, 147 B.R. at 88-89.
 
 
 16
 As noted in Constantino, New York law requires recoupment to arise out of the same set of transactions as the claim. 415 N.Y.S.2d at 969. We agree with the bankruptcy court's determination that debtor's deposit for utility services "ar[ose] out of the same transaction or series of transaction [sic] under a single agreement as the provision of such services by NYSEG [; and that] [g]enerally, this would serve as a basis for NYSEG [sic] being permitted to offset the [s]ecurity [d]eposit against the monies owed by the [d]ebtor under the doctrine of recoupment." In Re McMahon, No. 95-61194 (Bankr.N.D.N.Y. Aug. 11, 1995), at 8. The deposit plainly arose out of a single electricity contract between the debtor and NYSEG. See In Re Public Serv., 107 B.R. at 445.
 
 
 17
 Because the deposit and the debt arose out of the same transaction, NYSEG's claim "is essentially a defense to the debtor's claim against [NYSEG] rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." Lee v. Schweiker, 739 F.2d 870, 875 (3rd Cir.1984). A finding of setoff would be particularly inequitable where, as here, "the situation before us is not one in which the creditor seeking relief consciously made a loan, extended credit, or made payments required by a contract, as did the bankrupt's ordinary creditors." In Re B & L Oil Co., 782 F.2d at 159. Indeed, utilities typically do not choose or negotiate with their customers. They are ordinarily required by law to provide service to all persons who request it in terms that are generally fixed. See, e.g., 16 NYCRR § 13.2(c) ("A utility shall not deny an application for service except in a written notice ... stat[ing] the reason(s) for the denial ... [and] advis[ing] the applicant of the right to an investigation and review of the denial ... if the applicant considers the denial to be without justification."). The terms of service are strictly regulated by state law and the utility has minimal negotiating ability to improve its position. Cf. In Re Public Serv., 107 B.R. at 446 (considering New Hampshire utility regulations). Like a creditor who mistakenly overpays a debtor (In Re B & L Oil Co.) or a creditor who contracts to overpay a debtor (Waldschmidt v. CBS), the utility company that is obligated to offer utility service to a debtor should be able to effect a recoupment when the debtor fails to fulfill its part of the contract.
 
 
 18
 New York statutes operate to limit NYSEG's "recoupment" to a prescribed deposit. (See 16 NYCRR § 13.7(b) for guidelines utility must follow in calculating amount of deposit.) New York Public Service Law § 117 requires utility companies to refund the deposit to consumers only if the customers fully perform their payment obligations for one year. If there is a likelihood that a business customer may default, the utility may retain that customer's deposit for up to two years of nondelinquent payments. 16 NYCRR § 90.6. Utilities may apply the deposit to unpaid consumer bills. 16 NYCRR § 90.4. Under New York law, NYSEG's legal obligation to repay debtor's utility deposit never arose and would not have arisen until debtor's outstanding utility bills were paid. See Paalge, Inc. v. Niagara Mohawk Power Corp., 72 Misc.2d 768, 339 N.Y.S.2d 543, 545 (N.Y.Sup.Ct.1972). As noted in Brooks Shoe, 39 B.R. at 982, this utility deposit is "virtually indistinguishable from the debtor's having paid in advance for its telephone service." Because the debtor did not fulfill its payment obligations, NYSEG can recoup debtor's "advance payment deposit" that arose from the same utility contract, a payment prescribed not by contract as in Waldschmidt, but by statute.
 
 
 19
 The debtor claims, however, that recoupment generally operates as a defense and "does not seek damages in excess of sums already possessed by the defendant or in excess of those demanded by the complaint." Constantino, 415 N.Y.S.2d at 969. Here, as the bankruptcy court found, NYSEG sought an "affirmative recovery over and above the deposit in its possession" when it filed a proof of claim for $8,970.72 to recover the debtor's balance in excess of the $6,000 deposit retained by the utility. It was for this reason that the bankruptcy court determined that the $6,000 retention was a setoff. In Re McMahon, No. 95-61194, at 10. The bankruptcy court, however, misread the Constantino opinion. Constantino compared recoupment not to a setoff, but to a counterclaim, to make the point that recoupment, "unlike a counterclaim," does not seek damages in excess of sums already possessed by the defendant or in excess of those demanded by the plaintiff. In this respect recoupment does not differ from setoff. The Constantino court made no suggestion that a party seeking recoupment must drop affirmative claims it possesses beyond the recoupment.
 
 
 20
 Finally, citing Village Craftsman, debtor asserts that NYSEG cannot exercise recoupment because a pre-petition utility deposit is "cash collateral" within 11 U.S.C. § 363(a). "Cash collateral" includes "deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest...." Id. Because, under certain conditions, debtors can use, sell, and lease cash collateral under 11 U.S.C. § 363(c)(2), debtor asserts that the utility's post-petition application of the deposit as recoupment undermines the purpose of § 363(a). Appellee Br. at 9. Village Craftsman, however, fails to explain the significance of the "cash collateral" issue. Even if we were to find NYSEG's retention of the deposit to be a setoff, debtor would have no right to use the deposit as "cash collateral" under § 363(c)(2). The controversy is not whether the debtor's deposit is cash collateral, but whether the utility has the right to exercise a narrow equitable doctrine against the property to satisfy a pre-petition debt of the debtor. For the above-stated reasons, we hold that a utility's post-petition application of a pre-petition utility deposit to a debtor's pre-petition utility obligation is a recoupment not subject to the automatic stay of 11 U.S.C. § 362.
 
 
 21
 We note that public policy supports our interpretation of the recoupment doctrine in the utility context. Our ruling will facilitate claim adjudication. Though it found NYSEG's action to be a setoff subject to the automatic stay, the bankruptcy court approved NYSEG's application of the deposit to offset debtor's pre-petition debt. This is not unusual: debtor's counsel conceded in oral argument that bankruptcy courts in most cases grant pre-petition utility deposits as setoffs for pre-petition debts. Nor has debtor cited (and we have not found) any cases where courts have denied setoffs in the utility context because of inequitable conduct by the utility. Unlike other applications for setoffs, the bankruptcy court appears to have little role in scrutinizing the utilities' conduct to protect the interests of other creditors. Debtor asserts that in Chapter 7 bankruptcies, where the automatic stay usually expires sixty days after the filing of the petition, utilities need only wait until the expiration to exercise setoff of utility deposits without permission of the bankruptcy court. Debtor concedes, however, that motions to exercise setoff in relief from the automatic stay are required in Chapter 11, 12, and (as in the present case) Chapter 13 bankruptcies. Appellee Br. at 12. To the extent such motions are required, a decision forcing utilities to formally request setoffs would seem to impose needless transaction costs upon the utilities, costs borne ultimately by the consumer. NYSEG and the amicus also contend that a ruling requiring utilities to bear the cost of applying for setoffs would encourage utilities to demand larger deposits or "mechanically apply[ ] security deposits of financially stressed customers" to delinquent balances. Amicus Br. at 21. The threat of discontinued service, they argue, would push customers into filing for bankruptcy. We are not entirely persuaded. While a utility's decision to terminate service could force financially troubled customers into bankruptcy (see Brooks Shoe, 39 B.R. at 983), a utility's decision to apply a deposit to a delinquent account could also give customers the breathing room necessary to pay their subsequent utility bills.
 
 
 22
 Because of the strict regulation of utilities, the special law of utility deposit ownership, and the unique public policy implications of the recoupment/setoff issue in bankruptcy in the utility context, nothing in this opinion should be interpreted to apply to non-utility creditors. We recognize and reaffirm the bankruptcy court's vital supervisory role over creditor actions affecting debtors. Nor do we address the separate issue of whether a utility can apply a pre-petition deposit to obligations incurred by a debtor post-petition.
 
 II. Actual Damages Under § 362(h)
 
 23
 The Bankruptcy Code, 11 U.S.C. § 362(h), states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." Because NYSEG's action was a valid recoupment not subject to the automatic stay, the debtor was not entitled to recover actual damages.
 
 Conclusion
 
 24
 For the reasons set forth above, the judgment of the district court affirming the award of actual damages under 11 U.S.C. § 362(h) is reversed.
 
 
 
 *
 The Honorable Harlington Wood, Jr. of the United States Court of Appeals for the Seventh Circuit, sitting by designation