278 F.3d 138
 WESTINGHOUSE CREDIT CORPORATION, n/k/a CBS Corporation, Petitioner-Appellant,
v.
Florence B. D'URSO, Trustee, as successor to Florence B. D'Urso, Executrix under the Last Will and Testament of Camillo Durso, Deceased, Respondent-Appellee.
 Docket No. 99-7752(L).
 Docket No. 99-7758(CON).
 United States Court of Appeals, Second Circuit.
 Argued December 9, 1999.
 Decided January 29, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED John I. Karesh, Feltman, Karesh, Major & Farbman, LLP, New York, NY (Donald F. Schneider, Arthur D. Russell, Marlene D. Hall, Of Counsel), for Appellant.
 Richard H. Dolan, Schlam Stone & Dolan, LLP, New York, NY (Bennette D. Kramer, Of Counsel), for Appellee.
 Before: WINTER, F.I. PARKER, and SOTOMAYOR, Circuit Judges.
 F.I. PARKER, Circuit Judge.
 
 
 1
 Petitioner-Appellant Westinghouse Credit Corporation, n/k/a CBS Corp. ("Westinghouse"), appeals from two judgments of the United States District Court for the Southern District of New York (Louis L. Stanton, Judge), entered May 26, 1999 and June 2, 1999 upon a May 24, 1999 memorandum endorsement, granting Westinghouse's motion to confirm an arbitration award, denying its motion for summary judgment, dismissing its claim against an escrow fund, granting Respondent-Appellee Florence B. D'Urso's motion for summary judgment, and directing the escrow agents to pay the remaining balance of the escrow fund to D'Urso.
 
 
 2
 This appeal concerns the 1989 sale of Durso Supermarkets, Inc. ("the Company") from D'Urso ("Seller") to T.F. Acquisition Corp., which later merged into DSI (collectively, "Buyer"). The $43,950,000 purchase price was paid with a cash payment and a note and mortgage. A portion of the cash payment was placed in escrow to provide for adjustments to the purchase price. After Buyer defaulted on the note, Seller obtained a judgment for nearly $8.2 million. Seller also obtained a judgment in an adversary proceeding in bankruptcy court, concerning the termination of a lease made pursuant to the sale of the company, for a net amount of $717,350. Meanwhile, Buyer contested the purchase price adjustment ("PPA") calculated and delivered by Seller, and eventually an arbitrator awarded Buyer's successor-in-interest, Westinghouse, an adjustment which, with interest, came to nearly $2.3 million. The issue raised on appeal is whether Seller was entitled to satisfy and extinguish the PPA awarded by the arbitrator by recoupment or setoff against her judgment on the note and lease. Because we find that the PPA and the judgment arise out of discrete and independent units of the transaction, and in light of the parties' intentions as reflected in their Stock Purchase Agreement, we hold that Seller may not apply recoupment in this case. We further hold that the parties may not apply the doctrine of setoff in this case because the requirement of mutuality has not been met. We therefore vacate the judgment of the district court and remand for further proceedings.
 
 I. BACKGROUND
 
 3
 The facts of this consolidated appeal are undisputed. The appeal arises out of the sale of the Company, which comprised, among other things, 22 supermarkets and the real estate on which three of the stores were operated. On June 9, 1989, Seller and Buyer entered into the Stock Purchase Agreement ("Agreement"), which provided for the transfer of all shares of the Company to Buyer in exchange for a purchase price of $43,950,000. The Agreement also required Seller to deliver a Lease to the Buyer for properties owned by Seller upon which four of the stores were located.
 
 
 4
 Section 2.03 of the Agreement provided that the purchase price would be paid as follows:
 
 
 5
 (a) a down payment of $750,000 payable concurrent with the execution of the Agreement;
 
 
 6
 (b) a cash payment of $35,000,000 less interest on the down payment as follows: (i) $30,750,000 directly to Seller; and (ii) $4,250,000 to a designated agent ("Escrow Agent(s)") to be held as the Escrow Fund in accordance with the terms of an attached Escrow Agreement; and
 
 
 7
 (c) a Note executed jointly by Buyer and the Company for the balance of $8,200,000 ("Purchase Money Debt"), secured by a purchase money mortgage on the Company's owned realty, i.e., the property on which three of the 22 stores were located, and paid in monthly installments of interest with the principal and any accrued interest due on the second anniversary of the closing date.
 
 
 8
 Section 2.02 of the Agreement provided for the possibility of a post-closing purchase price adjustment ("PPA") once the final net worth of the Company had been determined by Seller's accountants and the final financial statements had been delivered to Buyer. Calculation of the PPA, if any, was to be made by reference to the final financial statements. Upon timely objection by either Buyer or Seller, any dispute over the calculation was to be submitted for final and binding arbitration by an accounting firm selected by Buyer and Seller. Payment of the PPA was to be made within 25 days after delivery of the final financial statements or, if applicable, within ten days of any decision by the arbitrator.
 
 
 9
 Section 9.08 of the Agreement provided, in relevant part, that "[i]n any case where Seller is obligated to pay Buyer any sum under this Agreement ... Buyer shall be entitled to make a claim against the Escrow Fund under the procedure set forth in the Escrow Agreement."
 
 
 10
 Although the Agreement was not contingent on the Buyer's ability to obtain financing, the Buyer entered into various agreements with Westinghouse to finance the purchase. Westinghouse is not a party to any of the agreements between Seller and Buyer, and Seller is not a party to any of the financing agreements between Buyer and Westinghouse.
 
 
 11
 On September 1, 1989, the transaction between Seller and Buyer closed. Seller transferred all stock in the Company to Buyer, and Buyer tendered the purchase price, comprising the cash payment of $35,000,000 (of which $4,250,000 was placed into the Escrow Fund held by the Escrow Agents) and the Note for $8,200,000. In addition, a separate Escrow Agreement was signed with Chemical Bank as Escrow Agent.
 
 
 12
 On December 14, 1989, Seller's accountants delivered to Buyer the final financial statements and a check in the amount of $190,302.70, representing the PPA as calculated by Seller's accountants. Buyer objected to Seller's calculation of the PPA, but did not proceed immediately to arbitration.
 
 
 13
 On September 1, 1991, the principal on the Note became due and Buyer defaulted. Seller filed suit on the Note in the Supreme Court of the State of New York, New York County, and in 1992 that court granted summary judgment for Seller in the amount of $8,196,690.50. D'Urso v. Peltz, No. 28371/91, (N.Y.Sup.Ct. July 6, 1992), aff'd, D'Urso v. Durso Supermarkets, Inc., 201 A.D.2d 251, 607 N.Y.S.2d 260 (1st Dep't 1994). Despite Buyer's attempts at appeal and collateral attack, Seller's judgment remains intact. In 1997, Seller received $5,345,276.68 from the sale of the mortgaged real estate as partial satisfaction of the judgment.
 
 
 14
 On July 9, 1992, Buyer filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. In the course of the bankruptcy proceedings, Buyer initiated an adversary proceeding against Seller in which it sought, among other things, judgment for the PPA pursuant to the Agreement. The Bankruptcy Court permitted Westinghouse to prosecute Buyer's PPA claim due to Westinghouse's security interest in the intangible assets of Buyer. Seller demanded arbitration of Buyer's PPA claim pursuant to the Agreement. Upon Seller's motion, the district court withdrew the standing reference to the Bankruptcy Court and in 1994 ordered Buyer to arbitrate its PPA claim. Durso Supermarkets, Inc. v. D'Urso (In re Durso Supermarkets, Inc.), 170 B.R. 211, 216 (S.D.N.Y.1994).
 
 
 15
 Another adversary proceeding concerned the Lease, which Seller had terminated when Buyer defaulted on the Note. After a bench trial in Bankruptcy Court, Seller was awarded a net amount of $717,350 in unpaid rent and taxes. Durso Supermarkets, Inc. v. D'Urso (In re Durso Supermarkets, Inc.), 193 B.R. 682 (Bankr. S.D.N.Y.1996), amended by Corrected Final Order and J., Ch. 11 Case No. 92-B-43864 (PBA), Adv. No. 93-9475A (JHG) (Apr. 5, 1996).[1]
 
 
 16
 During the same period, Seller was negotiating with the New York State taxing authorities to resolve a claim for unpaid sales taxes that had accrued prior to the closing. After reaching an agreement to settle the dispute with the State, Seller sought to pay the settlement amount out of the Escrow Fund. Upon refusal by Buyer and Westinghouse, Seller commenced an adversary proceeding, seeking to pay the State from the Escrow Fund. In 1993, Seller paid the sales taxes to the State, mooting the specific relief requested by Seller in that proceeding. As a result, Seller and Buyer exchanged a draft amended complaint and answer in 1995, but never filed those pleadings. Seller's unfiled draft amended complaint sought, among other things, setoff against the state court judgment obtained on the Note. The district court held this proceeding in abeyance pending the outcome of the arbitration related to the Escrow Fund.
 
 
 17
 On July 21, 1998, the arbitrator issued its decision, awarding Westinghouse the principal amount of $337,251.26 plus interest in the amount of $1,961,813.89 for a total of almost $2.3 million on Buyer's PPA claim. On August 6, 1998, Seller sought a pre-motion conference with the district court on her claim that, since the arbitration award should be set off against the unpaid judgments on the Note and Lease, she was entitled to the remainder of the Escrow Fund. On August 17, 1998, Westinghouse petitioned the district court for an order confirming the arbitration award and directing the escrow agents to release sufficient funds from the Escrow Fund for satisfaction of the arbitration award. Seller filed a response to the petition in which she asserted that she had no objection to confirmation of the arbitration award and affirmatively alleged that the award had been satisfied by recoupment and setoff against amounts due her pursuant to the judgments on the Note and Lease.
 
 
 18
 On cross-motions for summary judgment, the district court confirmed the arbitration award and dismissed Westinghouse's claim against the Escrow Fund on the ground that Seller was entitled to recoup or set off the award against the amounts owed on the Note and Lease. D'Urso v. Durso Supermarkets, Inc. (In re Durso Supermarkets, Inc.), Nos. 93 Civ. 6768(LLS) and 98 Civ. 5861(LLS), slip. op. at 1-2 (S.D.N.Y. May 24, 1999). The court concluded that, since the PPA was merely an adjustment to Buyer's obligation to pay the purchase price, Seller was not obligated to pay Buyer any sum and, therefore, "there is no occasion for Westinghouse to claim against the Escrow Fund." Id. at 1. Nevertheless, concluded the court, "[e]ven viewing the [PPA] as a payment by the Seller to the Buyer..., the Seller is entitled to offset (or `recoup') the [PPA] against the amount the Buyer owes it." Id. The court determined that, although the recoupment doctrine may only be invoked for claims arising out of a single, narrowly-defined transaction, this case involved such a transaction. The court concluded that "in this case the cash payment, the note, and the lease were part of an integrated transaction, the sale of the business, and all are provided for in the Stock Purchase Agreement. The sale of the business could not be accomplished as contemplated without each of those components." Id. at 2. The court then granted Westinghouse's motion to confirm the arbitration award and Seller's motion for summary judgment, denied Westinghouse's motion for summary judgment, and directed the Escrow Agents to pay the entire amount remaining in the escrow fund to Seller. Id.
 
 II. DISCUSSION
 
 19
 The issue raised on appeal is whether Seller is entitled to satisfy and extinguish the PPA awarded to Buyer by the arbitrator by recoupment or setoff against her judgments on the Note and Lease. Because we find that the PPA and the judgments arise out of discrete and independent components of the transaction, and in light of the parties' intentions as reflected in the Stock Purchase Agreement, we hold that it would be inequitable in the circumstances to permit Seller to apply recoupment in this case. We further hold that the parties may not apply the doctrine of setoff in this case because the requirement of mutuality is not met. We therefore vacate the judgment of the district court and remand for further proceedings.
 
 
 20
 The district court had jurisdiction over these actions, i.e., the Escrow Fund adversary proceeding filed by Seller in 1992 and the petition for confirmation of the arbitration award filed by Westinghouse in 1998, pursuant to 28 U.S.C. § 1334(b) and 9 U.S.C. § 9. We exercise jurisdiction over this consolidated appeal pursuant to 28 U.S.C. § 1291.
 
 
 21
 We review a grant of summary judgment de novo under the same standard applied by the district court. See Taggart v. Time Inc., 924 F.2d 43, 45-46 (2d Cir.1991). A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. See id. at 255, 106 S.Ct. 2505. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir.1994).
 
 
 22
 A. Seller's Alleged Failure to Plead Recoupment and/or Setoff
 
 
 23
 Westinghouse's threshold argument — that Seller failed to plead setoff or recoupment — is not supported by the record. Seller pleaded setoff in the arbitration as a defense to Westinghouse's statement of the claim.[2] According to Seller, the parties stipulated to the withdrawal of the defense and to reservation of that issue for decision by the district court, although the record is unclear as to the nature of the decision reserved to the district court, if any, concerning the defenses. It is clear, however, that Seller pleaded recoupment and setoff in her response to Westinghouse's petition to confirm the arbitration award. Finally, as noted by Westinghouse, Seller raised the issue of setoff in a draft amended complaint, dated December 22, 1995, in the Escrow Fund litigation originally commenced by Seller in the Bankruptcy Court. The record indicates that Seller did plead the defenses at the appropriate times — during the arbitration and in response to Westinghouse's petition to confirm the arbitration. Moreover, we find that Westinghouse was on notice of Seller's assertion of these defenses and their underlying factual bases as early as December 1995. Westinghouse's argument to the contrary is without merit.
 
 B. Construction of the Agreement
 
 24
 Westinghouse also argues that the district court improperly construed the Agreement to require payment by Buyer of the full purchase price (i.e., payment in full on the Note in addition to the money paid at closing) before the terms providing for the remittance of the PPA were to come into effect when the court noted that "[i]f the full purchase price had been paid, the Seller would have to pay the Buyer ... the amount of the adjustment, and provisions for that payment ... would come into effect, and would be secured by the Escrow Fund." D'Urso v. Durso Supermarkets, Inc. (In re Durso Supermarkets, Inc.), Nos. 93 Civ. 6768(LLS) and 98 Civ. 5861(LLS), slip. op. at 1 (S.D.N.Y. May 24, 1999). Westinghouse is correct that the unambiguous language of the Agreement does not support such a construction. Indeed, the Agreement explicitly requires Seller to use her "best efforts" to deliver the financial documents to Buyer within 90 days of closing, and to remit the PPA within 25 days after that. The principal on the Note, in contrast, was not payable until the second anniversary of the closing. However, Westinghouse's assertion that the district court read the Agreement to impose such a requirement is incorrect. The language of the district court's memorandum endorsement to which Westinghouse refers merely describes the practical effect of Buyer's default on the Note before payment of the PPA was required. In any event, before making its determination concerning the applicability of recoupment, the district court assumed for argument's sake that the PPA constituted a payment to be made by Seller under the Agreement. Id. at 1 ("Even viewing the Adjustment as a payment by the Seller to the Buyer ... the Seller is entitled to offset (or `recoup') the Adjustment against the amount the Buyer owes it.").
 
 C. Recoupment
 
 25
 In addition to arguing that Buyer did not plead recoupment, Westinghouse asserts that Seller is not entitled to recoupment because the award and the judgments on the Note and Lease did not arise out of a single transaction and because it would be inequitable for recoupment to defeat its rights as a secured creditor. We hold that, although this dispute concerns a single integrated transaction, because the obligations to which Buyer wishes to apply recoupment arise from discrete and independent units within that transaction, and in light of the parties' intent at the time they entered into the Agreement, it would be inequitable in the circumstances to permit Seller to apply recoupment.
 
 
 26
 In determining recoupment and setoff rights, we apply nonbankruptcy law. N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon), 129 F.3d 93, 96 (2d Cir.1997). Under New York law,[3]
 
 
 27
 [r]ecoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered. Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.
 
 
 28
 Id. (quoting Nat'l Cash Register Co. v. Joseph, 299 N.Y. 200, 203, 86 N.E.2d 561, 562 (N.Y.1949) (internal citations omitted)). "Recoupment is in the nature of a defense, the purpose of which is to do justice viewing one transaction as a whole." Malinowski v. N.Y. State Dep't of Labor (In re Malinowski), 156 F.3d 131, 133 (2d Cir. 1998) (quoting United Structures v. G.R.G. Eng'g, 9 F.3d 996, 999 (1st Cir.1993)) (internal quotation marks and citation omitted); accord Constantino v. State, 99 Misc.2d 362, 415 N.Y.S.2d 966, 968-69 (N.Y.Ct.Cl.1979). Recoupment in bankruptcy often serves the purpose of "avoid[ing] the unjust result that would occur if a debtor [in bankruptcy] who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received." In re McMahon, 129 F.3d at 96. We have noted that "[i]n light of the Bankruptcy Code's strong policy favoring equal treatment of creditors and bankruptcy court supervision over even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed." Id. at 97.
 
 
 29
 Recoupment may only be applied in bankruptcy where "both debts ... arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." In re Malinowski, 156 F.3d at 133 (quoting Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1081 (3d Cir.1992)) (emphasis in Malinowski); cf. Constantino, 415 N.Y.S.2d at 969 ("Unlike a setoff, recoupment was required to arise out of the same set of transactions as the claim.") In addition, "[w]here the contract itself contemplates the business to be transacted as discrete and independent units, even claims predicated on a single contract will be ineligible for recoupment." In re Malinowski, 156 F.3d at 135; see also In re Univ. Med. Ctr., 973 F.2d at 1081 (holding that "same transaction" test for recoupment was not met where Medicaid payments due "were independently determinable and were due for services completely distinct from" earlier overpayments).
 
 
 30
 The language of the Agreement makes clear that Seller and Buyer entered into a single, integrated transaction: the sale of Seller's stock in the Company to Buyer in exchange for a price of $43,950,000, subject to the PPA, payable in cash and by the two-year $8.2 million Note. Contrary to Westinghouse's characterization, the Agreement did not encompass three separate transactions, i.e., stock purchase, realty purchase, and lease. The realty collateralizing the Note was owned by the Company — not Seller — both at execution of the Agreement and at closing. Thus, Seller could not have agreed to transfer the realty separately from the stock because the realty was a corporate asset of the Company. That the Agreement provided for a Note and mortgage does not alter the nature of the transaction, because the Note is nothing more than an instrument received in lieu of cash and the mortgage merely provided Seller with a security interest. Nor does the parties' assignment of a value to the Company's realty evince a separate transaction. As Seller explains, the property was valued separately in order to comply with New York tax law.[4]
 
 
 31
 As we noted in Malinowski, however, even where the parties' claims arise from a single contract, if "the contract itself contemplates the business to be transacted as discrete and independent units," recoupment may not be applied. 156 F.3d at 135. Although we ultimately concluded in Malinowski that those transactions were not integrated, the same reasoning militates against permitting recoupment even when an integrated transaction is at issue, if the underlying contract has established separate and distinct remedies for discrete portions of that transaction. The Stock Purchase Agreement constitutes such a contract, because the plain and unambiguous language of the Agreement indicates that the parties knowingly assigned different forms of security to discrete parts of the transaction, viz. the Note and the PPA. The Agreement specified the security Buyer would provide Seller for the Note: "a purchase money mortgage... on the Company's Owned Realty... and the fixtures and equipment located thereon." Similarly, the Agreement provided that monies sufficient to cover the PPA (and to indemnify Buyer) would be held in escrow in accordance with the terms of the Escrow Agreement — which in turn provided that the monies were set aside for the sole benefit of Buyer (not as security for the Seller) "[i]n the event that at any time and from time to time Seller fails to make any payment due to Buyer by reason of post closing adjustment of the Purchase Price ... or indemnification." The result was that Seller had a bargained-for security interest in those assets securing the Note, whereas Westinghouse was able to bargain for and receive a security interest in the remaining assets — including the contractual right to monies in the escrow fund in the event of a PPA.
 
 
 32
 The distinct forms of security created by the Agreement with respect to the Note and the PPA demonstrate that these obligations differ from one another in significant ways. Furthermore, they are not in any way contingent on one another, and indeed are not even complementary. We hold that although the Agreement constitutes a single integrated transaction, it is one that comprises "discrete and independent units," and therefore Seller may not use the monies in the Escrow Fund to recoup the outstanding balances on the Note and Lease.
 
 
 33
 This result is consistent with the equitable concept of recoupment. In light of the parties' clear intent at the time they entered into the Agreement to secure their obligations in distinct ways, to apply recoupment now would be inequitable. Like the recoupment doctrine itself, see, e.g., Town of Amherst v. County of Erie, 247 A.D.2d 869, 870, 668 N.Y.S.2d 848, 849 (4th Dep't 1998) (referring to doctrine as "equitable recoupment"); Peuser v. Marsh, 167 A.D. 604, 607, 153 N.Y.S. 381, 383 (3d Dep't 1915) (citing to definition of recoupment in Black's Law Dictionary (2d Ed.) as "[a] keeping back something which is due, because there is an equitable reason to withhold it"); see also In re Malinowski, 156 F.3d at 135 (noting "equitable nature of the recoupment remedy"), the principle that recoupment may not be applied to obligations arising from discrete and independent units is derived from equity. When we discussed that principle in Malinowski, we relied on Conoco, Inc. v. Styler (In re Peterson Distributing, Inc.), 82 F.3d 956 (10th Cir.1996). In that case, the Court of Appeals for the Tenth Circuit held that recoupment did not apply since the contractual provisions, pursuant to which Conoco held credit card invoices belonging to Peterson, "evince[d] the parties' intent to facilitate their relationship [through an electronic funds transfer arrangement], not to alter the underlying rights to certain funds." Id. at 962. The court reasoned that "no overriding equitable reason exists that compels the application of the doctrine of recoupment" since, if recoupment were allowed, Conoco "would effectively be given a security interest in the credit card invoices that was unknown to and undiscoverable by other unsecured creditors doing business with Peterson." Id. at 962-63. That is likewise true here. It would be inequitable to allow Seller to recoup the PPA against its unsecured claim for the balances on the Note and Lease, since doing so would give Seller an unbargained-for position superior to a secured creditor — Westinghouse — contrary to the intent of the parties as expressed in the Agreement. In this context, applying recoupment "would give [Seller] a windfall and unjustly enrich [her] at the expense of" Westinghouse. Id. at 963. Both Buyer and Seller were represented by attorneys and investment bankers, and it is only fair to defer to the "allocation of risk and potential benefit" that was the outcome of the parties' negotiations, as reflected in the Agreement. Grumman Allied Indus., Inc. v. Rohr Indus., Inc., 748 F.2d 729, 734 (2d Cir.1984) ("By giving effect to explicit contractual terms, a court has a better chance to carry out the intentions of the parties. Particularly where the two sides are sophisticated, their allocation of risk and potential benefit is properly treated as supreme to any conflicting understanding we may have."). Critically, Seller chose not, or was unable, to arrange to further secure the Note and the Lease payments with monies in the Escrow Fund; instead, the parties agreed to set aside the monies in the Fund solely for the protection of Buyer. We conclude that to apply the doctrine of recoupment now, in effect restructuring the transaction after the fact, would be inequitable, and we decline to do so.
 
 D. Setoff
 
 34
 Finally, Westinghouse contends that setoff is also inapplicable in this case, arguing that the mutuality requirement has not been met. We agree.
 
 
 35
 "The right of setoff ... allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." In re Malinowski, 156 F.3d at 133 (quoting from Official Comm. of Unsecured Creditors v. Mfrs. and Traders Trust Co. (In re Bennett Funding Group, Inc.), 146 F.3d 136, 140 (2d Cir.1998)) (internal quotation marks omitted). In setoff, the debts may arise from different transactions, Kemper Reins. Co. v. Corcoran (In re Midland Ins. Co.), 79 N.Y.2d 253, 259-60 & n. 2, 590 N.E.2d 1186, 1189, 582 N.Y.S.2d 58, 61 (1992), but they must be mutual, Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.), 181 B.R. 730, 740 (Bankr. S.D.N.Y.1995) (citing Beecher v. Peter A. Vogt Mfg., 227 N.Y. 468, 473, 125 N.E. 831 (1920)). "[D]ebts are mutual when they are due to and from the same persons in the same capacity." Id.; accord In re Midland Ins. Co., 79 N.Y.2d at 259, 582 N.Y.S.2d 58, 590 N.E.2d 1186.[5]
 
 
 36
 It is well-established that escrow monies are held in trust and that an escrow agent is a trustee, Oppenheim v. Simon, 57 A.D.2d 1006, 1008, 394 N.Y.S.2d 500, 502 (3d Dep't 1977); see also Farago v. Burke, 262 N.Y. 229, 233, 186 N.E. 683 (1933), and that obligations lack mutuality where one party is a trust beneficiary asserting his or her rights against a trustee, and the other is a creditor exercising his or her contractual rights, In re Consol. Indem. & Ins. Co., 287 N.Y. 34, 38-39, 38 N.E.2d 119 (1941) (Claims "lack the quality of mutuality" where one party "asserts the right of a cestui que trust against a trustee [and] the other asserts a contractual obligation of a debtor to his creditor."). Furthermore, a person holding monies pursuant to a contractual obligation is "a trustee ... as to moneys in its hands belonging to the [beneficiary] or to be applied to a specific purpose," in which case setoff may not be applied. Pink v. Amer. Sur. Co. of N.Y., 283 N.Y. 290, 296, 28 N.E.2d 842, 844 (1940); accord Consol. Indem. & Ins. Co., 287 N.Y. at 38, 38 N.E.2d at 120-21 (quoting Pink).
 
 
 37
 Westinghouse has petitioned the district court to compel Seller to order the Escrow Agents to release the PPA award from the Escrow Fund pursuant to the Escrow Agreement; Seller seeks to set off its obligation against the judgments in its favor on the Note and Lease. In this context, these obligations are not "due to and from the same persons in the same capacity," Vogt Mfg., 227 N.Y. at 473, 125 N.E. 831, because Westinghouse, standing in Buyer's place, asserts its claim for the monies in escrow in the capacity of a trust beneficiary, while Seller, who is owed the remaining balances on the Note and Lease, asserts its claim in the capacity of an unsecured creditor.
 
 
 38
 We therefore conclude that the obligations at issue in this case are not mutual, and therefore Seller may not invoke the doctrine of setoff in order to escape its obligation to order the Escrow Agents to release the PPA.
 
 III. CONCLUSION
 
 39
 For the foregoing reasons, the decision of the district court, denying its motion for summary judgment, dismissing its claim against the Escrow Fund, granting Seller's motion for summary judgment, and directing the Escrow Agents to pay the entire Escrow Fund to Seller, is vacated. The case is remanded to the district court for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 Judge Gallet's lengthy decision in that proceeding provides further background to this transaction
 
 
 [2]
 In light of our past observation that "the distinction between a recoupment and a setoff retains little significance under the modern rules for asserting counterclaims in pleading,"N.Y. State Elec. & Gas Co. v. McMahon (In re McMahon), 129 F.3d 93, 96 (2d Cir. 1997), and given that the factual basis is the same for either defense, Seller's denomination of her defense as setoff in the arbitration is not fatal to her argument that Westinghouse was on notice of Seller's assertion of both recoupment and setoff.
 
 
 [3]
 We apply New York law in this case where applicable in light of the Agreement's choice of law provision at Section 11.06
 
 
 [4]
 At most, the Agreement represented two transactions, i.e., stock purchase and lease. We need not determine, however, whether the lease was a separate transaction for purposes of recoupment because, as noted by the district court, the judgment on the Note exceeds the PPA award and thus the lease is not implicated
 
 
 [5]
 An important distinction between setoff and recoupment is that setoff, unlike recoupment, is recognized by the Bankruptcy Code. 11 U.S.C. § 362(a)(7) (providing for an automatic stay of setoff against debts owing to debtor); 11 U.S.C. § 553 (providing for recovery of monies set off within 90 days of filing of petition). However, both "[r]ecoupment and setoff rights are determined by nonbankruptcy law."In re McMahon, 129 F.3d at 96 (quoting In re Village Craftsman, Inc., 160 B.R. 740, 746 (Bankr.D.N.J.1993)) (internal quotation marks omitted).